ZULICK, J.,
Plaintiffs Diana Mauceri and Carlo Sibilla have filed a motion for partial summary *370 judgment. Mauceri and Sibilla initiated this quiet title action on August 29,2013, seeking declaratory judgment. The defendant, First National Bank of Pennsylvania, (First National) purchased a parcel of land known as Manor View Avenue, Mount Pocono, Pennsylvania, Tax Parcel 10/8/2/25 (the property), at a judicial sale held on May 2,2012. The owners of the property at the time of the judicial sale were Tyco Realty, Inc. and Tyco Homes, Inc. (the Tycos). Mauceri and Sibilla allege that they obtained default judgments in this court against Tyco Realty, Inc. on March 23, 2012 in the amount of $211,241.55 and against Tyco Homes, Inc. on the same date in the amount of $20,760.00.
Mauceri and Sibilla contend that First National bought the property subject to these two judgments. They argue that their liens survived the judicial sale because they were not given proper notice of the sale. Their action to quiet title seeks to establish that their judgments continue to be valid liens on First National’s property. First National argues that the plaintiffs’ judgments did not become liens against the property because the Tycos did not have legal title to the real estate at the time the judgments were entered. First National contends that when the property was exposed to upset tax sale on September 14,2011, and was not purchased, the Monroe County Tax Claim Bureau (MCTCB) became the legal owner of the property.
Mauceri and Sibilla filed a partial motion for summary judgment on October 31, 2014. First National filed a response to plaintiff’s motion on November 24, 2014. Both parties briefed their positions, and both matters were argued before the court on December 1, 2014.
*371 DISCUSSION
“Summary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.” Gleason v. Borough of Moosic, 15 A.3d 479, 484 (2011). A material fact is one that directly affects the outcome of the case. Bartlett v. Bradford Publ’g, Inc., 885 A.2d 562, 568 (Pa. Super. 2008). A court must view the evidence in the light most favorable to the nonmoving party, and all doubts as to a genuine issue of material fact must be resolved against the moving party. Gleason, 15 A.3d at 484 (citing Fine v. Checcio, 870 A.2d 850 (2005)). When the moving party satisfies its initial burden, the nonmoving party may not simply rest upon the allegations or denials contained in the pleadings; instead the nonmoving party must show there is a genuine issue for trial. Preferred Fire Prot., Inc. v. Joseph Davis, Inc., 984 A.2d 20, 24 (Pa. Super. 2008). A nonmoving party’s failure to adduce sufficient evidences on an issue essential to the case establishes that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Ario v. Ingram Micro, Inc, 965 A.2d 1194, 1207 n.15 (Pa. 2009).
The parties do not dispute the facts necessary to decide the question before the court. Mauceri and Sibilla concede that the MCTCB attempted to sell the property at the upset tax sale on September 14, 2011, but was unsuccessful. The Tycos have never contested the upset sale or the later judicial sale. The MCTCB filed a petition on December 28, 2011 requesting leave to conduct a judicial sale of properties which included the Tycos’ property. A hearing was held on the petition on March 20,2012. First National *372 concedes that the plaintiffs obtained judgments in this court against the Tycos that were entered of record on March 23, 2012. The MCTCB did not serve the plaintiffs with notice of the March 20, 2012 hearing, because their liens were not of record until after that date. Both parties agree that First National then bought the property at the May 2, 2012 judicial tax sale.
First National contends that the Tycos lost legal title to their property following the unsuccessful September 14, 2011 upset tax sale. It relies upon the holding in Commonwealth v. Sprock, 795 A.2d 1100 (Pa. Cmwlth. 2003) for this proposition. In Sprock, the owners’ property was exposed for sale at an upset tax sale, but was not purchased. The bureau maintained the property in its inventory of unsold property, but did not seek to sell the property at judicial sale. Ten years later, the owners’ were cited under a local ordinance for failure to maintain their property. They defended on the basis that they did not own the property, the Somerset County Tax Claim Bureau did. The Sprock court stated:
Sections 608 and 615 of the Law [72 P.S. §§5860.608, 5860.615] instruct that the deed to a tax delinquent property sold at an upset sale shall be conveyed by the bureau as trustee, which is a person or entity holding legal title to property for the benefit of another. Thus, it is clear that a tax claim bureau must become trustee of a property at the moment it concludes the upset sale, that is, when the property is struck down, and legal title to the tax delinquent property passes to the tax claim bureau, as trustee, at that time, which is the most *373 appropriate time for that to happen because the owner’s right of redemption at that time is extinguished.
Id. at 1103.
“[A]t an upset sale, where there are no bids of the upset sale price, all rights in the property, i.e., legal title, are transferred from the owners of the property to the tax claim bureau, as trustee, by operation of law.”
Id. at 1103, n.9.
Thus, First National contends that the Mauceri and Sibilla judgments did not attach to the Tycos property because the Tycos were not the legal owners of the property at that time; the MCTCB was the legal owner, as trustee, by operation of the Real Estate Tax Sale Law (RETSL).
Mauceri and Sibilla argue that they were lien creditors of the Tycos as of March 23, 2012 when their judgments were docketed. RR.C.R 3023 provides that:
Except as provided by subdivision (b), a judgment when entered in the judgment index shall create a lien on real property located in the county, title to which at the time of entry is recorded in the name of the person against whom the judgment is entered.
P.R.C.P. 3023(a).
The RETSL provides in 72 P.S. §5860.610 that when the upset price is not bid at the upset sale, the TCB may petition to sell the property at judicial sale:
...Upon the presentation of such petition, accompanied with searches, showing the state of the record and the *374 ownership of the property and all tax and municipal claims, liens, mortgages, ground rents, charges and estates against the same, the court shall grant a rule upon all parties thus shown to be interested to appear and show cause why a decree should not be made that said property be sold, freed and cleared of their respective tax and municipal claims, liens, mortgages, charges and estates, except separately taxed ground rents. The rule shall be made returnable in not more than thirty (30) days from the date the petition was presented or as otherwise determined by the court.
72P.S. §5860.610.
Thus, the statute requires notice to lienholders of the petition to schedule a judicial sale when an upset sale is unsuccessful. Due process requires that notice of the judicial sale be given to all parties with a property interest, including lienholders. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983); First Pa. Bank, N.A. v. Lancaster Cnty. Tax Claim Bureau, 470 A.2d 938 (Pa. 1983).
The Commonwealth Court considered a situation where a lien holder did not receive notice of a judicial sale in Muhlenberg Tp. Authority v. Fisher, 503 A.2d 1022, 1024 (Pa.Cmwlth.1986). There a sewer authority had placed sewer liens upon a customer’s property. The property was exposed to upset tax sale but there were no bids. A judicial sale was then held and the property was sold. The sewer authority was not served with the petition for judicial sale. The court ruled that the sewer liens were not discharged. The court stated:
*375 ...the tax sale immediately and drastically diminished the value of the lien by granting the purchaser title free of all liens without an opportunity to be heard by the lienholder because of no notice.
Failure to give notice does not discharge the lien and purchasers take the property subject thereto. (Citation omitted.)
Id. at 1024.
The first question presented in this case is whether the Tycos had legal title to the property when the Mauceri and Sibilla liens were docketed. The Muhlenberg Township case does not answer this question because the timing of the entry of the sewer liens cannot be determined from reading that opinion. Counsel have not cited any cases involving judgment liens docketed after the upset sale. However, there is no question here that the Tycos were the record owners of the property when the judgment liens were entered. Under Pennsylvania law, these judgments attached to Monroe County real estate titled in the name of the judgment debtor at time of entry. See P.R.C.P. 3023(a). The protection provided to judgment creditors by P.R.C.P. 3023 is available against record owners. The Tycos were the record owners of the property when the judgments were docketed.
First National invites the court to overlook Rule 3023 based upon the Sprock decision and hold that even though the Tycos had record title, the judgments did not attach because legal title was held by a non-record trustee, the MCTCB. If First National’s argument is correct, the MCTCB would be legally responsible for hundreds of *376 properties that it does not have possession of, with all of the consequences that would entail.
The Commonwealth Court addressed the status of legal title after an upset sale in Willard v. Delaware County Tax Claim Bureau, 921 A.2d 1273 (Pa. Cmwlth. 2007). There a property went through upset sale in 1996 with no bids. The Delaware County Tax Claim Bureau did not immediately petition for a judicial sale, and taxes became delinquent through 2005. On May 3, 2004, one of the owners of the property transferred his one-half interest in the property to his children by recorded deed. On March 3, 2005, the tax claim bureau petitioned for a judicial sale. The tax claim bureau did not give notice of the hearing on the petition to the new owners;
The Commonwealth Court affirmed the trial court’s order setting aside the sale. The court stated;
The tax claim bureau made no attempt to notify Harrison’s children, even though they were readily identifiable as the successors to their father’s interest. in the property by virtue of the deed of gift recorded in Delaware County on May 3, 2004, nearly one year before the judicial sale. fn7 Finally, Willard, Harrison and the Harrison children all testified that they were unaware of the judicial sale scheduled for May 25, 2005.
fnl. Neumann argues that the trial court erred by allowing the Harrison children to intervene in this matter. This argument is clearly without merit since they were the real parties in interest at the time of the *377 2005 judicial sale.
Id. at 1280.
The Commonwealth Court found that the record owner had the authority to deed his interest in the property to his children after the upset sale, and also found that the children were entitled to notice of the judicial sale petition as “the real parties in interest.” No suggestion was made that the tax claim bureau was the legal owner, or that the post-upset sale transfer of record ownership was in any way invalid.
The Willard case does not answer the final question presented here, however. The Mauceri and Sibilla judgments were not entered until March 23, 2012, three days after the hearing held on the MCTCB petition to schedule the judicial sale. Of course the MCTCB gave no notice of the hearing on the judicial sale petition to Mauceri and Sibilla because they had no lien on the property on that date. Did the MCTCB have an obligation to provide notice to them as later-appearing creditors in order for the sale to be valid? There does not seem to be a reported case on this issue.
The case of Citimortgage, Inc. v. KDR Investments, LLP, 954 A.2d 755 (Pa. Cmwlth. 2008) is instructive. There the Dauphin County Tax Claim Bureau sent certified mail notice of a tax sale addressed to the owner of the property on July 17, 2006. The tax sale notice was returned to the bureau and marked “return to sender, unclaimed, unable to forward.” In the meantime, Citimortgage was foreclosing on that owner, and obtained a recorded sheriff’s deed on July 27, 2006. The tax claim bureau then mailed a *378 second notice of tax sale by first class mail, this time to Citimortgage, as the owner of record.
The upset tax sale was held, the property was purchased, and afterwards, Citimortgage petitioned to overturn the sale. Both the trial court and the Commonwealth Court ruled that the sale was invalid. The Commonwealth Court stated that because of due process concerns, the “[n]otice provisions of the [tax sale] law are to be strictly construed, and there must be strict compliance with such provisions to guard against deprivation of property without due process of law,” citing Ali v. Montgomery County Tax Claim Bureau, 124 Pa. Cmwlth. 557, 562, 557 A.2d 35, 37 (1989), Id. at 759.
The court emphasized its holding:
...the notice requirement is absolute. A property that changes owners one day before a scheduled tax sale must be delisted in order to give the new owner at least 30 days advance notice, by certified mail, of the impending tax sale.
In sum, a property may not be sold at a tax sale unless the one who owns the property on the day of the sale is given notice by certified mail of an impending tax sale at least 30 days prior to the sale. The bureau must be able to produce evidence that it gave this notice to the one who owns the property on the day of the tax sale. If the bureau cannot produce this proof, the tax sale is invalid. Because the bureau did not send notice to Citimortgage by certified mail, 30 days before its property was sold, the trial court correctly set aside the *379 tax sale.
Id. at 760.
Here the RETSL statute, 72 P.S. §5860.610, addresses the due process concerns for a judicial sale by requiring the court to grant a rule upon all interested parties to “appear and show cause why a decree should not be made that said property be sold, freed and cleared of their respective... liens....” Similar to the Citimortgage situation cited above, the Mauceri and Sibilla liens appeared of record after the MCTCB attempted to give notice to interested parties. However, their liens were on public record well before the sale, for all to see, including the MCTCB and First National. Mauceri and Sibilla were entitled to notice and an opportunity for a hearing before their lien was eliminated.
Our Pennsylvania Supreme Court has stated:
We hold, therefore, that tax sales are proceedings which may deprive judgment creditors of property rights, and hence, notice and hearing must measure up to the standards of due process. When the judgment creditors is identified in a judgment that is publicly recorded, constructive notice by publication must be given and supplemented by notice mailed to the judgment creditor’s last known available address, or by personal service as is the case for mortgagees....
Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered *380 or well versed in commercial practice, if its name and address are reasonably ascertainable.
In re Upset Sale, Tax Claim Bureau of Berks County, 479 A.2d 940, 946 (Pa. 1984).
If providing notice to Mauceri/Sibilla meant that the Tyco properties would have to be removed from the 2012 sale, that is the directive suggested by the Citimortgage holding.
The motion for partial summary judgment did not address the notice issues in the case, because they involved testimonial affidavits. The motion for partial summaiy judgment will be granted as far as the question of whether the Mauceri/Sibilla liens attached. I find that they did and that notice and an opportunity for a hearing had to be given to the judgment creditors for those liens to be discharged. A final hearing will be scheduled to address the remaining issues in this action to quiet title.
ORDER
And now, this 12th day of January, 2015, following argument on plaintiffs’ partial motion for summaiy judgment, it is ordered as follows:
1. The motion is granted.
2. A hearing on the merits of this case to resolve remaining issues of notice of sale is scheduled for the 29th day of January, 2015, at 9:00 o’clock a.m. in Courtroom No. 5, Monroe County Courthouse, Stroudsburg, Pennsylvania.